UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RASA HAYES, an individual, on behalf of plaintiff and a class, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 14-1467<br>) |
| CONVERGENT HEALTHCARE RECOVERIES, INC., an Illinois Corporation; CF MEDICAL, LLC, a Nevada Limited Liability Company; and JOHN AND JANE DOES NUMBERS 1 THROUGH 25, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on Plaintiff's [35] Renewed Motion for Class Certification. For the reasons set forth below, Plaintiff's [35] Motion is Granted.

### BACKGROUND

The following facts are taken from Plaintiff's complaint and motion for class certification. Plaintiff, Rasa Hayes, is a citizen and resident of New Jersey. On April 25, 2006, she incurred a debt to Jersey Shore University Medical Center (the "Jersey Shore Obligation") in exchange for medical services. She later defaulted on the debt, the original creditor determined that the account was uncollectible, charged it off, and sold the debt to an unknown purchaser of defaulted consumer debts. Some time prior to February 10, 2014, CF Medical, LLC ("CF Medical") purchased the Jersey Shore Obligation and later transferred it, either directly or through intermediate transactions, to Convergent Healthcare Recoveries, Inc. ("Convergent") for collection.

1

Convergent mailed a collection letter to Hayes, dated February 10, 2014, attempting to collect the debt. The letter stated, in relevant part:

Dear Rasa Hayes,

This notice is being sent to you by a collection agency. The records of CF Medical, LLC show that your account has a past due balance of $10129.80. Please contact this office to resolve your account . . . .

CF Medical, LLC purchased this account from the original creditor/provider and has advised us that they are willing to settle your account for 50% off your total balance due. The full settlement must be received in this office by an agreed upon date. If you are interested in taking advantage of this offer, call this office within 45 days of this letter. Even if you are unable to take advantage of this offer, please contact this office to see what terms can be worked out on your account.

| Date of Service | Amount Due | Account Number | Former Creditor |
|---|---|---|---|
| 04/25/06 | $10129.80 | [Redacted] | Jersey Shore Universit |

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with a name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt, and any information obtained will be used for that purpose. This communication is from a debt collector.

Please detach the bottom portion of this letter and return it with your payment.

ECF Doc. 35-1, at 2.

New Jersey's statute of limitations for filing to collect a medical debt is six years from the date after the cause of action accrued. N.J. Stat. § 2A:14-1. Plaintiff alleges that as of January 20, 2014, more than seven years had elapsed since the last payment or activity on the Jersey Shore Obligation that Convergent sought to collect. Plaintiff claims that Convergent's collection letter caused Plaintiff to believe that she had a legal obligation to pay the Jersey Shore Obligation that

2

Convergent was offering to settle and that Convergent or CF Medical might seek to file a lawsuit to collect the debt or report it to credit reporting agencies if she did not accept the offer. Nothing in the letter disclosed that the Jersey Shore Obligation was barred by the statute of limitations, and thus legally unenforceable. Plaintiff did not contact Convergent or send payment in response to the letter.

Plaintiff brings this action on behalf of herself and a proposed class. Since the filing of this action, Plaintiff has settled her individual capacity claim against CF Medical. Plaintiff's renewed motion seeks to certify a class composing:

> (a) all individuals with addresses in the State of New Jersey (b) to whom Convergent (c) sent a collection letter offing a settlement of a debt (d) on which the last payment or activity had occurred more than six years prior to the date of the letter, (e) which letter was sent on or after December 9, 2013 and on or before December 30, 2014.

ECF Doc. 36, at 3.

Convergent's opposition to Plaintiff's motion addresses Article III standing and the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. First, Convergent argues that "a resolution as to whether each class member's debt was actually beyond the New Jersey statute of limitation will depend on factual determinations that require individualized inquiry for each class member." Second, Convergent claims that "Plaintiff suffered no actual damages and has alleged a purely technical violation of the FDCPA" which is insufficient to satisfy the injury-in-fact requirement of Article III. Third, Convergent claims that Plaintiff's claims cannot be considered typical of the class because she lacks standing. Fourth, Convergent argues that Plaintiff is an inadequate representative of the proposed class. Fifth, Convergent alleges that Plaintiff's attorney is not qualified to represent the class. Convergent's sixth

argument claims that class certification is inappropriate because common questions of fact will not predominate over the individualized inquiries. ECF Doc. 37, at 8-9.

## LEGAL STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The "irreducible constitutional minimum of standing consists of three elements. . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff bears the burden of establishing each element. *Id*.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (citing *Lujan*, 504 U.S. at 560). "An injury is 'particularized' when it affects the plaintiff in a personal and individual way; an injury is concrete when it is "'real,' and not 'abstract.'" *Id*. at 1549-49. "Although tangible injuries are perhaps easier to recognize . . . intangible injuries can nevertheless be concrete." *Id*. (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)). Whether an intangible harm constitutes an injury in fact is determined by looking to "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and whether Congress has "elevate[d] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549 (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-77 (2000)).

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for class actions:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23.

## ANALYSIS

Convergent opposes Plaintiff's motion for class certification on two main grounds, lack of Article III standing and failure to meet the requirements for class actions under Rule 23(a) and Rule 23(b). Those arguments are addressed in turn, below.

**(A) ARTICLE III STANDING**

In order to invoke a federal court's subject matter jurisdiction, a plaintiff must demonstrate that he or she has standing under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Thus, the plaintiff bears the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

5

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The Supreme Court's recent decision in *Spokeo* clarified that "to establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1547-48 (citing *Lujan*, 504 U.S. at 560)). A concrete injury is one that is "real" and "actually exists," but may be either tangible or intangible. *Id*. at 1548-49. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," because "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Accordingly, a plaintiff cannot satisfy the injury in fact requirement by merely alleging "a bare procedural violation, divorced from any concrete harm." *Id*.

At issue in this case is whether Convergent violated the Fair Debt Collection Practices Act ("FDCPA") when they sent dunning letters to New Jersey citizens attempting to collect on debts without disclosing that the debts were time-barred under New Jersey's statute of limitations. Section 1692e[1] of the FDCPA provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .
> (2) The false representation of-- (A) the character, amount, or legal status of any debt . . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

---

[1] Plaintiff also alleges Convergent violated 15 U.S.C. § 1692f, which prohibits unconscionable and unfair means to collect or attempt to collect a debt.

6

15 U.S.C. § 1692e.

Whether a representation in a dunning letter is misleading is assessed from the "unsophisticated consumer" standpoint, i.e., "whether a person of modest education and limited commercial savvy would be likely to be deceived." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007).

Convergent claims that Plaintiff lacks standing because she did not suffer a concrete injury as a result of receiving the dunning letter—"[s]he missed no time from work, incurred no out-of-pocket expenses, and paid no monies to Defendants." ECF Doc. 37, at 15. Additionally, Convergent argues that "the FDCPA does not require a debt collector to explicitly advise consumers that a debt may be time-barred by a particular state's statute of limitations," thus, "the alleged procedural violation at issue is completely divorced from any concrete harm." ECF Doc. 44, at 4; ECF Doc. 37, at 15. In response, Plaintiff argues that "*Spokeo* specifically recognized that the denial of information is 'a sufficient injury in fact to satisfy Article III.'" ECF Doc. 41, at 1. Plaintiff claims that Convergent's failure to inform consumers who were sent dunning letters of the legal status of their debts violated the FDCPA's prohibition on false or misleading representations and unfair practices. ECF Doc. 41, at 5. Thus, Plaintiff argues that she "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982)).

The Court is persuaded that Plaintiff "has presented evidence of a concrete injury resulting from alleged violations of the FDCPA." See *Mogg v. Jacobs*, No. 15-1142, 2016 WL 4395899, at *4 (S.D. Ill. Aug. 18, 2016). Unlike *Spokeo*, where a "violation of one of the FCRA's procedural requirements may result in no harm," a violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm,

7

sufficient to meet the requirement of concreteness. See *Spokeo*, 136 S. Ct. at 1549. The Supreme Court in *Spokeo* explained that, "[f]or example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate . . . . [N]ot all inaccuracies cause harm or present any material risk of harm . . . . It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id*. at 1550.

In contrast to the FCRA, a false or misleading representation in violation of § 1692e of the FDCPA is, by both definition and logic, not "entirely accurate." Moreover, unlike an incorrect zip code, a debt collector's failure to indicate that the debt for which collection is sought is legally unenforceable is not a "bare procedural violation." Rather, such omissions present a material risk of harm—the risk that the consumer would be misled into believing that the debt is legally enforceable. Furthermore, a dunning letter that misleads the consumer as to the legal status of the debt is exactly the harm that Congress identified and sought to curb by creating a statutory right to accurate information under the FDCPA. See *Owens v. LVNV Funding, LLC*, 15-2044, 2016 WL 4207965, at *7–8 (7th Cir. Aug. 10, 2016) (Wood, C.J., dissenting) ("[I]f the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation . . . , the collector has violated the FDCPA); *McMahon v. LVNV Funding*, 744 F.3d 1010, 1020 (7th Cir. 2014).

Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases. See *Quinn v. Specialized Loan Servicing, LLC*, No. 16-2021, 2016 WL 4264967 at *5 (N.D. Ill. Aug. 11, 2016) (defendant's failure to provide plaintiff with information required under § 1692e constituted a sufficiently concrete harm to confer Article III standing);

8

*Lane v. Bayview Loan Servicing, LLC*, No. 15-10446, 2016 WL 3671467, at *4 (N.D. Ill. Jul. 11, 2016) (finding a sufficiently concrete injury where defendant denied plaintiff right to information required under § 1692g); *Bernal v. NRA Group, LLC*, No. 16-1904, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016) ("The type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete."); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (holding plaintiff had Article III standing where defendant tried to collect an illegal collection fee, even if plaintiff did not pay the fee); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082-83 (7th Cir. 2013) (debtors had standing where debt collectors filed unlawful collection suit but never served plaintiff with complaint); *Owens v. LVNV Funding, LLC*, __F.3d__, 2016 WL 4207965 (7th Cir. Aug. 10, 2016) (post-*Spokeo* decision on similar FDCPA claim with no reference to standing). Consistent with the cases cited above, the Court finds that Plaintiff has alleged a concrete injury sufficient to confer Article III standing.

**(B) CLASS CERTIFICATION**

*Rule 23(a)*

Rule 23(a) of the Federal Rules of Civil Procedure provides four prerequisites that a proposed class must satisfy in order to be certified as a class action: "(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015); Fed. R. Civ. P. 23(a). Plaintiff, as "[t]he party seeking certification[,] bears the burden of demonstrating that certification is proper by a

preponderance of the evidence." *Bell*, 800 F.3d at 373 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)).

*Rule 23(a)(1): Numerosity*

Plaintiff's seeks certification for a class defined as "(a) all individuals with addresses in the State of New Jersey (b) to whom Convergent (c) sent a collection letter offing a settlement of a debt (d) on which the last payment or activity had occurred more than six years prior to the date of the letter, (e) which letter was sent on or after December 9, 2013 and on or before December 30, 2014." ECF Doc. 35, at 1. Convergent admitted in discovery that 11,420 individuals fit Plaintiff's definition and does not challenge certification on this ground. Because joinder of 11,420 individuals would clearly be impracticable, Plaintiff has met her burden of establishing numerosity.

*Rule 23(a)(2): Commonality*

In order to satisfy Rule 23(a)'s commonality requirement, the Plaintiff must "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (internal quotations omitted). The class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.").

Convergent argues that Plaintiff cannot satisfy the commonality requirement because "addressing the statutes of limitations issue under New Jersey law will require an individualized analysis for each class member, not only of the date of any particular payment toward the debt, but also the specific circumstances surrounding that payment to determine whether it qualifies as a 'new' promise to pay sufficient to restart the limitations period." ECF Doc. 37 at 11. Convergent claims that determining whether the statute of limitations has run is "a highly fact-sensitive inquiry" into the payment timing and history, which will be different for each class member.

Convergent is generally correct that determining whether the statute of limitations has run may require individual inquiries into the nature and circumstances of the payments on the debt. But Plaintiff's proposed class is not defined as "debts that are time-barred," but rather, as debts "on which the last payment or activity had occurred more than six years prior to the date of the letter." Thus, even if a putative class member's prior "payment or activity" was sufficient to reset the limitations period, the debt would still have lapsed after six years of inactivity.[2] By limiting the putative class to members whose last payment or activity was beyond six years, Plaintiff has removed the "fact-sensitive inquiry" that would be required with a more broadly defined class.

Of course, determining the date of the putative members' last payment or activity will still require some individualized analysis. However, it appears that analysis has already been completed—Convergent was able to identify 11,420 individuals who fit Plaintiff's class definition. See ECF Doc. 41, at 9. Even if Convergent had not identified the number of

---

[2] Nor can Convergent argue that those who made payments in response to the dunning letters are excluded from the class because the statute of limitations restarted. Rather, class members who made a new promise to pay because of an alleged misrepresentation of the legal status of the debt have claims for actual damages in addition to statutory damages. See *Owens*, No. 15-2044, 2016 WL 4207965, at *8 (Wood, C.J., dissenting) ("There is no event that could come to pass that could create an enforceable legal obligation for the debtor to pay up—at least no contingency that does not fall within the group of sharp or fraudulent practices that *Phillips* and *McMahon* hold are barred by the FDCPA. It is true that certain actions by the debtor can re-start the statute of limitations after it has run, but the debtor will not take those steps unless she is snookered into thinking that the debt is still legally enforceable.").

11

individuals, the Seventh Circuit recognizes that such information should be readily available to those in the business of collecting debts:

> [W]e find it unlikely that debt owners lack knowledge about the age of the debts they are attempting to collect. If the debt collector is the original creditor, it will know the relevant dates. If the collector is a third-party collecting on behalf of the original creditor, it should easily be able to get that information at the time the file is assigned by the original creditor on whose behalf it is acting. If the collector has purchased the debt from the original creditor, we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it, in which case whether the debt is time-barred should be known.

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014).

Thus, Plaintiff has met her burden of showing commonality. The questions raised in this case—whether Convergent sent consumers collection letters without disclosing the fact that they are time-barred, and whether Convergent's conduct violated the FDCPA—are questions common to each putative class member that will "generate common answers apt to drive the resolution of the litigation." *Bell*, 800 F.3d at 374. The proposed class satisfies Rule 23(a)(2).

*Rule 23(a)(3): Typicality*

In order to satisfy Rule 23(a)(3)'s typicality requirement, Plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). This requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Stated differently, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). Here, Plaintiff claims that "typicality is inherent in the class definitions" because "the members of the class were subjected to the same practices as Plaintiff, and thus suffered the same violation

of the FDCPA that Plaintiff suffered." ECF Doc. 36, at 9. In response, Convergent argues that Plaintiff cannot meet the typicality requirement because she suffered no concrete harm and thus lacks standing. ECF Doc. 37, at 16.

Here, Plaintiff's claims arise from receiving the dunning letter, which represent "the same event or practice or course of conduct" as the other class members. See *Retired Chicago Police Ass'n*, 7 F.3d at 597. Similarly, the claims of Plaintiff and the other class members are based on the same legal theory, that Convergent's omission of the legal status of the debt was deceptive or misleading under the FDCPA. See *id.* Finally, Convergent's argument that Plaintiff lacks standing was discussed and denied in the first part of this Opinion. Thus, Plaintiff has met Rule 23(a)(3)'s typicality requirement.

*Rule 23(a)(4): Adequacy*

The last element under Rule 23(a) requires that the representative parties fairly and adequately protect the interests of the class. The adequacy requirement "consists of two parts: (1) the adequacy of the named plaintiffs as representative of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Accordingly, "a class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598.

Plaintiff asserts that both she and her counsel are adequate representatives under Rule 23(a)(4):

> Plaintiff understands the obligations of a class representative. She reviewed the complaint before it was filed; she answered Defendant's written discovery requests; she traveled from her home in New Jersey to sit for a five hour out-of-district deposition in Chicago, and she has communicated throughout her case with counsel. She has retained experienced counsel—as indicated by Exhibits B and C to Plaintiff's renewed motion which set forth counsels' qualifications.

13

> Further, Plaintiff and class members seek money damages as the result of Defendants' unlawful collection practices, provided for by 15 U.S.C. § 1692k. Given the identity of claims between Plaintiff and members of the classes, there is not potential for conflicting interests in this action. There is no antagonism between the interests of Plaintiff and those of the classes. *McMahon v. LNLV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015).

ECF Doc. 36, at 10.

Convergent's response contains a litany of allegations related to the perceived inadequacies of Plaintiff and her counsel. Specifically, Convergent claims that Plaintiff did not review the Complaint before it was filed, she was not provided with her notices of deposition and did not bring documents to the deposition, she was never provided with Convergent's discovery requests, she did not recall reading or signing the affidavit in response to Convergent's motion to transfer venue, she never met or corresponded with any of her attorneys representing her in this action, she did not pursue this action vigorously on behalf of the CF Medical class and conceded that she failed to fulfill her obligations as a class representative, and Plaintiff's counsel failed to relay Convergent's individual settlement offer to Plaintiff. See ECF Doc. 37, at 18-19.

Convergent supports most of their allegations regarding the adequacy of Plaintiff and her counsel with transcripts from Plaintiff's deposition. However, a review of the transcripts reveals that those allegations are lacking. For example, Plaintiff explained that her counsel might have shown her the Complaint in 2014, but she did not recall. ECF Doc. 37-1, at 10. Convergent claims that Plaintiff was not provided with her notices of deposition and did not bring documents to the deposition, but the transcripts indicate that counsel produced Plaintiff for the deposition and the notes Convergent refers to did not exist. See ECF Doc. 37-1, at 4 ("Q. What did you make those notes on? A. In my head."). Additionally, Plaintiff's response when asked about reading or signing the affidavit in response to Convergent's motion to transfer venue is consistent with the vast majority of her other responses: she did not recall. On the other hand, she did recall

14

that one of her attorneys, Mr. Thomasson, had communicated with her about 20 times, (ECF Doc. 37, at 13), and she "reviewed a lot of documents." *Id*. at 4. Plaintiff also indicated that "she wanted to represent the class" and she would not accept any amount from Convergent to settle her claims individually. *Id*. at 12. Finally, Mr. Thomasson submitted an affidavit explaining that Plaintiff's individual claim against CF Medical was voluntarily dismissed after receiving information indicating that CF Medical was not involved in the mailing or drafting of collection letters. See ECF Doc. 41-1, at 5. The affidavit also states that Convergent's settlement offers were relayed to Plaintiff.

In sum, Convergent's attempt to question Plaintiff's adequacy based on her recollection and understanding of the legal process will not prevail. See *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013) ("To question her adequacy is to be unrealistic about the role of the class representative in a class action suit. The role is nominal."). While Plaintiff may not match the legal acumen of Convergent's counsel, that does not make her an inadequate representative of the class. Regardless, none of Convergent's arguments demonstrate that Plaintiff's claims are in any way "antagonistic or conflicting" with those of the class. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Similarly, Convergent's allegations directed at Plaintiff's counsel were adequately addressed by Mr. Thomasson's affidavit, and Convergent does not claim that Plaintiff's attorneys lack experience in litigating FDCPA claims or class actions. Thus, Plaintiff and her counsel have met Rule 23(a)(4)'s adequacy requirement.

*Rule 23(b)*

"In addition to meeting [Rule 23(a)'s] requirements, the class must satisfy one of the four conditions in Rule 23(b)." *Bell*, 800 F.3d at 373. Rule 23(b) provides:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

>    (1) prosecuting separate actions by or against individual class members would create a risk of:
>       (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>       (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>       (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>       (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>       (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>       (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b); *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Here, Plaintiff seeks certification under Rule 23(b)(3), which allows for class certification when common questions of law or fact predominate ("predominance") over individual questions, and when a class action is superior ("superiority") to other methods of adjudication. *Bell*, 800 F.3d at 373.

*Predominance*

"[A] common question predominates over individual claims if 'a failure of proof on the common question would end the case' and the whole class 'will prevail or fail in unison.'" *Bell*, 800 F.3d at 378 (quoting *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013)). However, "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class." *Id*. at 379.

16

Although the commonality requirement under Rule 23(a)(2) is similar, the predominance requirement under rule 23(b)(3) is "far more demanding." See *Bernal v. NRA Group, LLC*, No. 16-1904, 2016 WL 4530321, at *8 (N.D. Ill. Aug. 30, 2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

Here, the most significant issue in this case—whether Convergent violated the FDCPA by sending dunning letters to New Jersey consumers without disclosing the legal status of the debts—can be resolved on a classwide basis, without any individual inquiry beyond identification of the class members. See *Bernal*, 2016 WL 4530321, at *8. As discussed more thoroughly above, Plaintiff's proposed class definition is limited to those whose last payment or activity was beyond six years, thus removing the "fact-sensitive inquiry" that would be necessary with a broader class definition, i.e., those whose accounts were past the statute of limitations. While some class members may have actual damages as a result of sending payment in response to the dunning letter, such "individualized relief" does not preclude class certification. *Bell*, 800 F.3d at 378; *Bernal*, 2016 WL 4530321, at *8 (fact that liability may be individualized does not preclude a finding of predominance). Moreover, Convergent has already identified the number of individual class members meeting Plaintiff's class definition. ECF Doc. 41, at 9. Plaintiff has met her burden of establishing predominance under Rule 23(b).

*Superiority*

Rule 23(b)(3) sets forth four factors the Court must consider when determining whether a class action is superior to other methods of adjudicating the controversy: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff asserts that a class action is superior to other methods of adjudication in this case, reasoning that Convergent engaged in standardized conduct by sending the same dunning letters to class members, each class member's claim would likely be too small, and thus economically unfeasible to litigate in individual suits, and proceeding as a class would be both efficient and effective. ECF Doc. 36, at 10. Convergent does not address the superiority requirement.

     As to the first factor under Rule 23(b)(3), the "class members' interest in individually controlling the prosecution or defense of separate actions" is likely minimal, as neither party has indicated that the putative class members have brought individual suits and the class members are likely unaware of their rights under the FDCPA. See *Bernal*, 2016 WL 4530321, at *9. The second factor, "the nature and extent of any litigation concerning the controversy already begun by or against class members," supports a finding of superiority for the same reason—the Court is unaware of any ongoing litigation by individual class members. The third factor considers "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This District is convenient to Convergent, an Illinois corporation with its principal place of business, registered agent, and offices all located in Peoria, Illinois. ECF Doc. 1, at 4. Additionally, concentrating the litigation in a single forum will promote judicial economy, prevent duplicative litigation, and avoid potentially inconsistent results. See *Ingram v. Corporate Receivables, Inc.*, See *Ingram v. Corporate Receivables, Inc.*, 2003 WL 21982152, at *5 (N.D. Ill. 2003). Finally, the "likely difficulties in managing a class action" are minimal in this case. As addressed earlier, common issues predominate, the same standardized

letter was sent to each class member, and the class members' identities have already been ascertained. See *Bernal*, 2016 WL 4530321, at *9. Accordingly, class certification is appropriate.

### (C) CERTIFICATION ORDER

Under Rule 23(c)(1)(B), the certification order must define the class and the class claims, issues, or defenses, and must appoint class counsel. The Court defines the class as follows:

> (a) all individuals with addresses in the State of New Jersey (b) to whom Convergent (c) sent a collection letter offing a settlement of a debt (d) on which the last payment or activity had occurred more than six years prior to the date of the letter, (e) which letter was sent on or after December 9, 2013 and on or before December 30, 2014.

The class issues are whether Defendant's written communications to the class members violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f. The Court appoints Plaintiff as class representative and Plaintiff's counsel as class counsel under Rule 23(g).

Plaintiff's counsel is directed to prepare and tender to Defendant a proposed notice to class members in conformity with Rule 23(c)(2)(B) within 14 days of this Order. If the parties agree to the proposed notice they may file the proposed notice with the Court within 21 days of this Order. Alternatively, the parties may file their respective proposed notices with the Court within 21 days of this Order. Finally, Defendant is directed to provide Plaintiff with the names and last known mailing addresses of all class members in a manipulable format within 14 days of this Order.

### CONCLUSION

For the reasons stated above, Plaintiff's [35] Motion is Granted.

Signed on this 7th day of October, 2016.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge